IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs February 23, 2017 at Knoxville

**SHAUN RONDALE CROSS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Marshall County**
**No. 15-CR-129     F. Lee Russell, Judge**

_____

**No. M2016-01578-CCA-R3-PC**

_____

The Petitioner, Shaun Rondale Cross, appeals as of right from the Marshall County Circuit Court's denial of his petition for post-conviction relief. The Petitioner contends that his guilty plea was not voluntary because one of his trial attorneys "terrorized" him by threatening that he would receive "an all[-]white jury" that would "hang" him if he went to trial. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

M. Wesley Hall IV, Unionville, Tennessee, for the appellant, Shaun Rondale Cross.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Robert J. Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

On October 2, 2014, the Petitioner pled guilty to one count of possession with intent to sell 26 grams or more of cocaine and received a sentence of twenty-five years as a Range III, persistent offender. The Petitioner filed a timely pro se petition for post-conviction relief. The gravamen of the petition was that the Petitioner had been "terrorized" into pleading guilty when one of his trial attorneys threatened him by stating that he would face "an all[-]white jury" that would "hang" him if he did not accept the

State's plea offer.[1]  Counsel was appointed to represent the Petitioner, and a post-conviction hearing was held on this matter.

Original counsel testified that she was appointed to represent the Petitioner. Original counsel recalled discussing the facts of the case with the Petitioner, reviewing the discovery materials with him, and discussing with him the fact that he had enough prior convictions to qualify as a career offender.  Original counsel advised the Petitioner that he faced a minimum sentence of thirty years to be served at sixty percent if convicted at trial.  Original counsel testified that the Petitioner understood and wanted to go forward with a jury trial.

Original counsel admitted that during these initial discussions, she spoke to the Petitioner about the possible composition of the jury, the demographics of Marshall County, and that, in her opinion, Marshall County was "a particularly conservative jurisdiction."  Original counsel denied that she told the Petitioner that "he was going to get an all-white jury."  She also denied that she told the Petitioner that the jury would "hang" him, stating that she did not "think [she] would use a term like that . . . [e]ven figuratively."  Original counsel testified that after her discussion with the Petitioner about the possible composition of the jury, "he still chose to go forward with a jury trial."

As the trial date neared, the Petitioner's family hired a different attorney to represent him.  Due to the closeness of the scheduled trial date, the trial court ordered original counsel to continue to represent the Petitioner and to assist successor counsel in preparing for trial.  Original and successor counsel then received supplemental discovery from the State.  The supplemental discovery included recordings of phone calls the Petitioner had made from jail.  Both original and successor counsel reviewed the recordings and discussed them with the Petitioner.

Original counsel believed that the recordings were "very incriminating."  Original counsel recalled that the recordings contained "an admission" by the Petitioner that was "pretty close to a confession."  After reviewing the recordings, the Petitioner wanted to reopen plea negotiations.  Original counsel testified that "it was not until [they] received [the] supplemental discovery that [the Petitioner] chose to enter the plea."  Given the nature of the supplemental discovery, the trial court broke with its normal policy and allowed the Petitioner to enter a guilty plea a few days before the scheduled trial date.

---

[1] The petition raised other grounds for post-conviction relief.  However, this issue was the main issue addressed at the post-conviction hearing and the only issue raised on appeal.  Additionally, the Petitioner's post-conviction counsel at the post-conviction hearing and on appeal couched this issue as one of ineffective assistance of counsel, unlike the pro se petition.

Successor counsel recalled that the Petitioner raised "the issue of the jury and jury makeup" and that they had "a discussion about just juries in general." However, successor counsel did not recall the Petitioner's ever stating to him that original counsel had "made the statement that he'd be tried by an all-white jury." Successor counsel testified that had the Petitioner made such a claim he would have, "[a]t a minimum," spoken to original counsel about it. Furthermore, successor counsel testified that the Petitioner wanted to proceed to trial even after their discussion about juries.

Successor counsel testified that it was only after they had received and reviewed the supplemental discovery that the Petitioner decided to plead guilty. Successor counsel agreed with original counsel's assessment of the recordings. Successor counsel testified that the recordings were "a hurdle too high to overcome given the risk involved." Successor counsel negotiated the plea agreement with the State and was able to get the State to reduce its original offer of a thirty-year sentence to be served at sixty percent to a sentence of twenty-five years to be served at forty-five percent. Successor counsel testified that he was not able to attend the plea submission hearing, but that he reviewed the plea agreement with the Petitioner before the hearing.

The Petitioner claimed that his family hired successor counsel because original counsel urged him to accept the plea offer of twenty-five years. The Petitioner further claimed that he did not want to accept the plea agreement because he "wasn't in possession of the drugs." Contrary to the testimony of original and successor counsel, the Petitioner testified that he accepted the plea offer after original counsel told him "it was going to be an all-white jury" and that he "was going to be found guilty if [he] went to trial." The Petitioner denied that he pled guilty because of the recordings of his jail phone calls. However, the Petitioner admitted that original counsel's alleged statement about the possible jury composition was not the only reason that he pled guilty.

The Petitioner claimed that he told successor counsel about the "all-white jury" comment but that successor counsel "never responded on it." The Petitioner admitted that he told the trial court during the plea submission hearing that he was satisfied with the performance of both original and successor counsel. The Petitioner also admitted that he told the trial court that no one had threatened him into pleading guilty. The Petitioner claimed that he did not tell the trial court about original counsel's alleged threat because "it was [a] no-win situation."

The post-conviction court denied post-conviction relief. In doing so, the post-conviction court accredited the testimony of original and successor counsel over the Petitioner's testimony. The post-conviction court found that original counsel never made the threatening statements claimed by the Petitioner. Furthermore, the post-conviction court concluded that the Petitioner had failed to show that he pled guilty because of the

alleged statements. The post-conviction court found that the Petitioner chose to accept the plea agreement after he received the incriminating recordings of his jail phone calls.

ANALYSIS

On appeal, the Petitioner contends that original counsel "terrorized" him by threatening that he would receive an "all-white jury" if he went to trial, that these statements constituted ineffective assistance of counsel, and that they caused him to involuntarily plead guilty. The State responds that the Petitioner has failed to prove his factual allegations by clear and convincing evidence.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. However, we review the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness. Id. at 457.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to

counsel under article I, section 9 of the Tennessee Constitution.  <u>State v. Melson</u>, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In the context of a guilty plea, like the present case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of <u>Strickland</u>, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985); <u>see also</u> <u>Walton v. State</u>, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).  Here, the post-conviction court accredited the testimony of original and successor counsel that the statements alleged in the petition were never made.  There is no proof in the record before us that would preponderate against that finding.  Furthermore, the evidence at the post-conviction hearing established that the Petitioner chose to plead guilty after reviewing the State's supplemental discovery.  Accordingly, we conclude that the post-conviction court did not err in denying the petition.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE